**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------x

In re                                           :     Chapter 11
                                                :
IMX Acquisition Corp., et al., [1]              :     Case No. 16-12238 (___)
                                                :
                    Debtors.                    :     (Joint Administration Requested)

-------------------------------------------------------x

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS, PURSUANT TO**
**SECTIONS 105(a), 363 AND 364 OF THE BANKRUPTCY CODE, (I) AUTHORIZING**
**(A) PAYMENT OF PREPETITION OBLIGATIONS INCURRED IN THE ORDINARY**
**COURSE OF BUSINESS IN CONNECTION WITH INSURANCE PROGRAMS,**
**INCLUDING PAYMENT OF POLICY PREMIUMS, AND**
**(B) CONTINUATION OF INSURANCE PREMIUM FINANCING PROGRAMS;**
**AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK**
**AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO**

IMX Acquisition Corp. and its above-captioned affiliated debtors and debtors in

possession (each a "**Debtor**" and collectively, the "**Debtors**") submit this motion (this

"**Motion**") for the entry of an order, substantially in the form attached hereto as Exhibit B (the

"**Proposed Interim Order**") and Exhibit C (the "**Proposed Final Order**" and together, the

"**Proposed Orders**"), pursuant to sections 105(a), 363(b) and 364 of title 11 of the United States

Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**") and Rule 6003 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), (i) authorizing, but not directing, the Debtors

to (a) continue and, to the extent necessary, renew liability, property and other insurance

programs and pay policy premiums and broker fees arising thereunder or in connection

therewith, including prepetition obligations arising in the ordinary course of business, and (b)

continue the Debtors' insurance premium financing programs and renew or enter into new

---

[1]  The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are
as follows:  IMX Acquisition Corp. (9838); Implant Sciences Corporation (7126); C Acquisition Corp. (8021);
Accurel Systems International Corporation (3856).  The Debtors' headquarters are located at 500 Research Drive,
Unit 3, Wilmington, MA 01887.

premium financing programs, as necessary, under substantially similar terms, and (ii) authorizing banks and other financial institutions (collectively, the "**Banks**") to honor and process check and electronic transfer requests related to the foregoing.  The facts and circumstances supporting this Motion are set forth in the concurrently filed *Declaration of Roger Deschenes In Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**").[2]  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**").  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105(a), 363(b), and 364 of the Bankruptcy Code and Bankruptcy Rule 6003.

## BACKGROUND

**A.     General**

2.     On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue managing their properties and operating their business as debtors in possession pursuant

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or committee has been appointed in these chapter 11 cases.

3.      Additional information about the Debtors' business and the events leading to the commencement of these chapter 11 cases can be found in the First Day Declaration, which is incorporated herein by reference.

**B.      Insurance Programs[3]**

4.      The Debtors maintain, among others, insurance programs for directors and officers, general liability, commercial coverage, property, ocean cargo and umbrella, as described below (collectively, the "**Insurance Programs**"), through several different insurance carriers (each, an "**Insurance Carrier**," and collectively, the "**Insurance Carriers**"), including under the insurance contracts listed on Exhibit A attached hereto.[4]

*i.      D&O Insurance Programs*

5.      As is common with a business of this kind, the Debtors maintain insurance coverage for all of their directors and officers that covers, among other things, defense costs, settlements, court awards and pre- and post-judgment interest arising from claims brought by third parties alleging that an insured is liable for an error, misstatement, misleading statement,

---

[3]  The descriptions of the Debtors' Insurance Programs provided herein, including, without limitation, the PFA (as defined below), are intended only as a summary, and the actual terms of such Insurance Programs shall govern in the event of any inconsistency with the descriptions set forth herein.

[4]  Although the Debtors believe Exhibit A is a substantially complete list, Insurance Programs may have been inadvertently omitted.  The Debtors reserve the right to supplement and amend Exhibit A as needed.

In addition to the Insurance Programs discussed herein and the insurance contracts listed on Exhibit A attached hereto, the Debtors maintain insurance policies with respect to the Debtors' workers' compensation program (the "**Workers' Compensation Program**").  These policies are described in the *Debtors' Motion for Entry of Interim and Final Orders (a) Authorizing Payment of Certain Prepetition Workforce Claims, Including Wages, Salaries and other Compensation; (b) Authorizing Payment of Certain Employee Benefits and Confirming Right to Continue Employee Benefits on Postpetition Basis, (c) Authorizing Payment of Reimbursement to Employees for Expenses Incurred Prepetition, (d) Authorizing Payment of Withholding and Payroll-Related Taxes, (e) Authorizing Payment of Workers' Compensation Obligations, and (f) Authorizing Payment of Prepetition Claims Owing to Administrators and Third Party Providers* (the "Employee Wage Motion") filed concurrently herewith. Any relief requested with respect to the Workers' Compensation Program is requested in the Employee Wage Motion.

improper act, omission, neglect or breach of duty (the "**D&O Insurance Program**").  Prior to the Petition Date, the D&O Insurance Program was renewed through and including the dates set forth on Exhibit A attached hereto.  There are no outstanding premiums under the D&O Insurance Program as of the Petition Date.

*ii.*        *General Liability, Products Liability, Ocean Cargo, Foreign Package, and Umbrella Insurance Programs*

6.        The Debtors maintain certain commercial liability insurance policies that insure the Debtors for, among other things, employment, fiduciary, premises, automobile, operational, accident and personal injury liability (the "**Liability Insurance Program**").  Prior to the Petition Date, the insurance policies comprising the Liability Insurance Program were renewed through and including the various dates set forth on Exhibit A attached hereto.  There are no outstanding premiums under the Liability Insurance Program as of the Petition Date.

7.        The Debtors maintain products/completed operations liability insurance that insures the Debtors' property for sums that the Debtors are legally obligated to pay as damages because of bodily injury or property damage due to products-completed operations hazard, defined as bodily injury or property damage arising out of the Debtors' product or work. (the "**Products Liability Program**").  Prior to the Petition Date, the insurance policies comprising the Property Insurance Program were renewed through and including the dates set forth on Exhibit A attached hereto.  With the exception of any premiums under the Property Insurance Program that have been financed, as set forth more fully below, there are no outstanding premiums under the Property Insurance Program as of the Petition Date.

8.        The Debtors maintain certain ocean cargo insurance policies that insure the Debtors for all shipments of lawful goods and merchandise of the Debtors at and from ports

and/or places in the world (the "**Ocean Cargo Program**").  Prior to the Petition Date, the

insurance policies comprising the Ocean Cargo Program were renewed through and including the

dates set forth on Exhibit A attached hereto.  There are no outstanding premiums under the

Ocean Cargo Program as of the Petition Date.

9.       The Debtors maintain certain umbrella insurance policies that insure the

Debtors for certain losses in excess of the coverage provided by the Debtors' primary insurance

policies (the "**Umbrella Insurance Program**").  Prior to the Petition Date, the insurance policies

comprising the Umbrella Insurance Program were renewed through and including the dates set

forth on Exhibit A attached hereto.  There are no outstanding premiums under the Umbrella

Insurance Program as of the Petition Date.

**C.       Financed Program**

10.       It is not economically advantageous for the Debtors to pay the premiums

on each of their Insurance Programs on an annualized basis.  Accordingly, from time to time, in

the ordinary course of their business, the Debtors finance the premiums on certain of the

Insurance Programs.  As of the Petition Date, the Debtors were financing only the Products

Liability Program, or a portion thereof (the "**Financed Program**"),[5] pursuant to a premium

finance agreement (the "**PFA**") with AFCO Insurance Premium Finance.  The following is a

summary of the significant terms of the PFA:

| Financier | Approximate Monthly Payment | Number of Monthly Payments | Commencement Date for Monthly Payments |
|---|---|---|---|
| AFCO | $8,632.45 | 9 | March 24, 2016 |

---

[5] Exhibit A attached hereto identifies which of the Insurance Programs (or portions thereof) are Financed Programs.

D.      **Broker Fees**

11.      In connection with the Insurance Programs, the Debtors obtain brokerage services from TGA Cross Insurance, Inc.  (the "**Broker**").  The Broker assists the Debtors in obtaining comprehensive insurance for the Debtors' operations by, among other things, assisting the Debtors with the procurement and negotiation of the Insurance Programs and any premium financing agreements, and enabling the Debtors to obtain those policies and such premium financing agreements on advantageous terms at competitive rates.  The Broker fee is included in the annual premium paid by the Debtors for their insurance coverage, which fees are paid by the insurance company to the Broker.  As of the Petition Date, no amounts are due to the Broker.

## RELIEF REQUESTED

12.      By this Motion, the Debtors request the Court enter the Proposed Orders, (i) authorizing, but not directing, the Debtors to (a) continue and, to the extent necessary, renew the Insurance Programs and pay policy premiums arising thereunder or in connection therewith, including prepetition obligations arising in the ordinary course of business related to the Insurance Programs, and (b) continue the Financed Program and enter into new premium financing programs, as necessary, under substantially similar terms, and (ii) authorizing the Banks to honor and process check and electronic transfer requests related thereto.

## BASIS FOR RELIEF

A.      **The Court Should Authorize, But Not Direct, the Debtors, in Their Discretion, to Make Necessary Payments Related to the Insurance Programs to Maintain Existing Insurance Coverage**

13.      Maintaining the Debtors' insurance coverage under the Insurance Programs is a crucial ordinary-course-of-business transaction.  Authority to pay any prepetition amounts that may be due and owing related to the Insurance Programs—to the extent that the

Debtors determine that such payment is necessary to avoid cancellation, default, alteration,

assignment, attachment, lapse, or any form of impairment of the coverage, benefits or proceeds

provided under the Insurance Programs—is necessary.  The insurance coverage provided under

the Insurance Programs is essential for preserving the value of the Debtors' assets, thereby

allowing the Debtors to maximize the value of their assets though the sale process for the benefit

of their creditors and stakeholders.  Additionally, such coverage is required by state and federal

laws and the various contracts to which the Debtors are parties.  See, e.g., 28 U.S.C. § 959(b)

(chapter 11 debtor obligated under federal law to operate chapter 11 business according to the

laws of the states where business and properties are located).  Further, under the chapter 11

operating guidelines issued by the United States Trustee for Region 3 pursuant to 28 U.S.C.

§ 586, the Debtors are obligated to maintain during these chapter 11 cases certain types of

insurance coverage that are provided by certain of the policies included in the Insurance

Programs.

14.     In addition, the Debtors may need to renew or replace certain of their

Insurance Programs during the pendency of these chapter 11 cases.  The nonpayment of any

premiums, deductibles, or related fees under any of the Insurance Programs could result in one or

more of the Insurance Carriers increasing future insurance premiums, declining to renew their

insurance policies or refusing to enter into new insurance agreements with the Debtors.  If the

Insurance Programs lapse without renewal, the Debtors may be exposed to substantial liability

for first party property claims and third party liability claims, to the detriment of all parties in

interest.  Furthermore, the Debtors would be required to obtain replacement policies on an

expedited timeframe (and likely at a significantly higher price than the Insurance Programs

currently in place).

15.     Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  A bankruptcy court may use its equitable powers under section 105 of the Bankruptcy Code to permit a debtor in possession to pay prepetition claims when payment is necessary to effectuate a debtor's bankruptcy goals and essential to the continued operation of the business.  See Miltenberger v. Logansport. C. & S.W.R. Co., 106 U.S. 286 (1882); In re Lehigh & New Eng. Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981); In re Just for Feet, Inc., 242 B.R. 821, 825 (D. Del. 1999) (under necessity of payment doctrine prepetition claims may be paid if essential to the continued operation of the business during reorganization); In re Columbia Gas Sys., Inc., 171 B.R. 189, 192 (Bankr. D. Del. 1994) (recognizing that necessity of payment doctrine authorizes payment of prepetition claims when "such payment is essential to the continued operation of the business").

16.     In addition, the Court may authorize the Debtors to pay prepetition premiums and any related obligations to maintain insurance coverage under section 363(b) of the Bankruptcy Code.  In particular, section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Thus, under this section, a court may authorize a debtor to pay certain prepetition claims.  See In re Ionosphere Clubs, Inc., 98 B.R. 174, 175-77 (S.D.N.Y. 1989) (affirming lower court order authorizing payment of prepetition wages pursuant to section 363(b) of the Bankruptcy Code); In re UAL Corp., Case No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 9, 2002) (authorizing payment of prepetition claims under section 363 of the Bankruptcy Code as an out-of-the-ordinary-course transaction); In re Jillian's Entm't Holdings, Inc., Case No. 04-33192 (DTS) (Bankr. W.D. Ky. June 22, 2004).

17.     Furthermore, reflecting the recognition that payment of prepetition claims associated with a debtor's insurance program is critical to a debtor's chapter 11 efforts, courts in this District have routinely granted the relief requested herein in other chapter 11 cases.  See, e.g., In re Haggen Holdings, LLC, Case No. 15-11874 (KG) (Sept. 10, 2015, interim order, and Oct. 2, 2015, final order); In re Natrol, Inc., Case No. 14-11446 (BLS) (June 23, 2014).

**B.     The Court Should Authorize, But Not Direct, the Debtors, in Their Discretion, to Make Necessary Payments Under the PFA and Renew the PFA and/or Enter Into New Premium Financing Agreements In the Ordinary Course of Business**

18.     If the Debtors are unable to continue making payments under the PFA, AFCO may be permitted to terminate the Financed Program.  The Debtors would then be required to obtain replacement insurance on an expedited basis and likely at a significantly increased cost.  If the Debtors are required to obtain replacement insurance and to pay a lump sum premium for such insurance in advance, this payment may be the same or greater than what the Debtors currently pay to AFCO under the PFA.  Even if AFCO is not permitted to terminate the Financed Program, any interruption of payments would severely and adversely affect the Debtors' ability to finance premiums for future policies.  Thus, in view of the importance of maintaining the related insurance coverage and preserving their cash flow by financing their insurance premiums, the Debtors believe that it is in the best interest of their estates and creditors for the Court to authorize the Debtors to honor their obligations under the PFA.  Any other alternative would likely require considerable cash expenditures and would be detrimental to the Debtors' chapter 11 efforts.

19.     The PFA grants AFCO a security interest in the Financed Program, including all unearned premium, return premium, dividend payments, loss payments thereof, and/or any interest which may arise under any state insurance guarantee fund relating to any

policy listed in the Schedule of Policies under the PFA.  Security interests created by premium

finance arrangements generally are recognized as secured claims in bankruptcy to the extent of

the amount of unearned premiums financed pursuant to such agreements.  See TIFCO, Inc. v.

U.S. Repeating Arms Co. (In re U.S. Repeating Arms Co.), 67 B.R. 990, 994-95 (Bankr. D.

Conn. 1986); Drabkin v. A.I. Credit Corp. (In re Auto-Train Corp.), 9 B.R. 159, 164-66 (Bankr.

D.D.C. 1981).  Therefore, if the Debtors fail to make the required payments under the PFA,

AFCO could seek relief from the automatic stay, either to cancel the Financed Program in

accordance with the terms of the PFA or to seek adequate protection of its investments.  See

Universal Motor Express, 72 B.R. 208, 211 (Bankr. W.D.N.C. 1987) (recognizing that a default

under the financing arrangement and the resulting decline in value of the unearned premiums

justified relief from the automatic stay).  Accordingly, the practical solution from the Debtors'

perspective is to continue making the premium financing payments required under the PFA.

20.     In addition, the Court should also authorize the Debtors to renew or enter

into new premium finance agreements postpetition in the ordinary course of business.

21.     Section 363(c)(1) of the Bankruptcy Code provides that "the trustee [or a

debtor in possession] may enter into transactions, including the sale or lease of property of the

estate, in the ordinary course of business, without notice or a hearing, and may use property of

the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

Section 363(b)(1) of the Bankruptcy Code provides that, "[t]he trustee [or debtor in possession],

after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate." 11 U.S.C. § 363(b)(1).

22.     The Debtors submit that the renewal of the PFA and/or the execution of

new premium finance agreements constitute transactions in the ordinary course of business,

within the meaning of section 363(c)(1) of the Bankruptcy Code, that do not require prior bankruptcy court approval.

23.     Neither the Bankruptcy Code nor its legislative history provide a framework for analyzing whether a transaction is in the ordinary course of business.  The Third Circuit, however, has developed a two-part inquiry, including a "horizontal dimension" test and a "vertical dimension" test, for determining whether a transaction is in the ordinary course of business under section 363(c)(1).  See In re Roth American, Inc., 975 F.2d 949, 952 (3d Cir. 1992); see, e.g., In re Nellson Nutraceutical, Inc., 369 B.R. 787, 791 (Bankr. D. Del. 2007); Braunstein v. McCabe, 571 F. 3d 108, 124-25 (1st Cir. 2009).  The horizontal dimension test focuses on whether, from an industry wide perspective, the transaction is "of the sort commonly undertaken by companies in that industry." In re Roth American, Inc., 975 F.2d 202 at 953.  The vertical dimension test (or creditor's expectation test) focuses on the vantage point of a hypothetical creditor and inquires whether the transaction subjects the creditor to economic risks of a nature different from those the creditor accepted when it decided to extend credit to the debtor.  Id.

24.     The Debtors believe that the renewal of the PFA and/or the execution of new premium finance agreements satisfies the "horizontal dimension" test because maintaining insurance coverage and entering into related premium financing agreements is a common industry practice.  Drabkin v. A.I. Credit Corp., 800 F.2d 1153, 1154 (Fed. Cir. 1986) (Such a premium financing agreement is a "common commercial arrangement.").  The "vertical dimension" test is also satisfied because the Debtors' maintenance of insurance under premium finance agreements does not subject the Debtors' creditors to any economic risk, but rather, serves to protect the Debtors' creditors from economic risk.  Accordingly, the renewal of the

PFA and/or the execution of new premium finance agreements constitute "ordinary course" uses of estate property under section 363(c)(1) of the Bankruptcy Code.  See In re Roth American, 975 F.2d at 952 n.4 (citing U.S. v. Estate of Deutscher, 115 B.R. 592, 598-99 (M.D. Tenn. 1990), for the proposition that "trustee's use of fund to . . . reinstate insurance was in ordinary course of business").

25.     Indeed, the Debtors submit that it may be outside the ordinary course of business for them to fail to renew the PFA.  See In re Lavigne, 114 F.3d 379, 383-84 (2d Cir. 1994) (cancellation of insurance policy was not in the ordinary course of business). Nevertheless, out of an abundance of caution, the Debtors have filed this Motion seeking entry of the Proposed Order approving, under section 363 of the Bankruptcy Code, the Debtors' postpetition renewal of the PFA and/or the execution of new premium finance agreements.

26.     The Court may also authorize the Debtors to enter into new premium finance agreements pursuant to section 364(c)(2) of the Bankruptcy Code.  Section 364(c)(2) authorizes, after notice and a hearing, a debtor in possession to obtain debt secured by a lien on property of the estate.  See 11 U.S.C. § 364(c)(2).  Under any new premium finance agreement, the counterparty would likely require that the Debtors grant a security interest in the unearned premiums under the financed policies. See generally In re Schwinn Bicycle Co., 200 B.R. 980, 982 (Bankr. N.D. III. 1996) (describing insurance premium financing agreements).

27.     Section 364(c) authorizes a debtor, in the exercise of its business judgment, to incur secured debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estates.  See, e.g., In re General Growth Properties, Inc., 412 B.R. 122, 125-26 (Bankr. S.D.N.Y., May 14, 2009) (granting motion for postpetition financing upon finding that a) "no comparable credit [was] available on more favorable terms";

b) that the debtors needed postpetition financing to "to preserve [their] assets and continue their operations; and c) that the terms and conditions of the DIP Documents had been negotiated in good faith); In re Budget Group, Inc., Case No. 02-12152, 2002 Bankr. LEXIS 1050 (Bankr. D. Del. Aug, 1, 2002) (authorizing funding of acquisition of property on a secured basis where acquired property was necessary to maintain operations and debtor could not obtain such funding on an unsecured basis); In re Ames Dept. Stores, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to postpetition credit, courts "permit debtors-in-possession to exercise their basic business judgment consistent with their fiduciary duties").  Because a borrowing to maintain essential insurance coverage is in the best interests of the Debtors' estates, the Court should authorize the Debtors to renew the PFA and/or execute new premium finance agreements postpetition.

28.     Finally, courts in this District have, in other chapter 11 cases, regularly authorized debtors to continue their prepetition, and enter into new postpetition, insurance premium financing agreements.  See, e.g., In re Trump Entertainment Resorts, Inc., Case No. 14-12103 (KG) (Sept. 10, 2014).

**C.    The Court Should Authorize the Banks to Honor and Process the Debtors' Payments Related to the Insurance Programs and the PFA**

29.     The Debtors also request the Court to authorize the Banks, when requested by the Debtors, in their discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations described herein, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Debtors further request that all of the Banks be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion.

## SATISFACTION OF BANKRUPTCY RULE 6003

30.     Pursuant to Bankruptcy Rule 6003(b), any motion seeking to use property of the estate pursuant to section 363 of the Bankruptcy Code or to satisfy prepetition claims within twenty-one days of the Petition Date requires the Debtors to demonstrate that such relief "is necessary to avoid immediate and irreparable harm."  As set forth throughout this Motion, any disruption of the Debtors' Insurance Programs, including the Financed Program and the related PFA, would substantially diminish or impair the Debtors' efforts in these chapter 11 cases to preserve and maximize the value of their estates.

31.     For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

32.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As set forth throughout this Motion, any disruption in the Debtors' insurance coverage would be detrimental to the Debtors, their creditors and estates, and would impair the Debtors' ability to optimize their business performance at this critical time as they begin the chapter 11 process.

33.     For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Order.

## RESERVATION OF RIGHTS

34.     Nothing in the Proposed Order or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (ii) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates, (iii) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action against an Insurance Carrier, or (iv) shall be construed as a promise to pay a claim.

## NOTICE

35.     Notice of this Motion has been provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Debtors' thirty (30) largest unsecured creditors; and (v) counsel to the Debtors' prepetition and postpetition lenders.  Notice of this Motion and any order entered hereon will be served in accordance with Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

36.     The Debtors have not previously sought the relief requested herein from this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors request entry of the Proposed Orders, granting the

relief requested herein and such other and further relief as is just and proper.

Dated: October 10, 2016          YOUNG CONAWAY STARGATT & TAYLOR, LLP
       Wilmington, Delaware

/s/  *Donald J. Bowman, Jr.*
Matthew B. Lunn (No. 4119)
Donald J. Bowman, Jr. (No. 4383)
Shane M. Reil (No. 6195)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

WILLKIE FARR & GALLAGHER LLP
Paul V. Shalhoub
Debra C. McElligott
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111

Jennifer J. Hardy
600 Travis Street, Suite 2310
Houston, Texas 77002
Telephone: (713) 510-1766
Facsimile: (713) 510-1799

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

# **EXHIBIT A**

## **List of Insurance Policies**

| **Coverage Type** | **Insurer** | **Policy No.** | **Policy Term** | **Limits** |
|---|---|---|---|---|
| Ocean Cargo | AIG | 015917280 | 10/12/15 – 10/12/16 | $ 2,000,000 |
| Foreign Package | WorldSource | WS11004831 | 10/12/15 – 10/12/16 | $ 2,000,000 |
| Domestic Package | The Hartford | 08 UUN TD4717 | 06/01/16 – 06/01/17 | $ 6,000,000 |
| General Liability | The Hartford | 08 UUN TD4717 | 06/01/16 – 06/01/17 | $ 2,000,000 |
| Workers Compensation | The Hartford | 08 WE NY8100 | 06/01/16 – 06/01/17 | $  500,000 |
| Commercial Auto | The Hartford | 08 UEN TD4645 | 06/01/16 – 06/01/17 | $ 1,000,000 |
| Umbrella Liability | The Hartford | 08 RHU AB3495 | 06/01/16 – 06/01/17 | $ 2,000,000 |
| Products/Completed Operations Liability | Aspen Specialty Insurance Co. | CR0044N16 | 02/24/16 – 02/24/17 | $ 2,000,000 |
| Employment Practices Liability | Berkley Insurance Co. | 1373824 | 06/01/16 – 06/01/17 | $ 1,000,000 |
| Blanket Accident Insurance | National Union Fire Ins. Co. of PA | GTP 000 9121864-A | 01/01/16 – 01/01/19 | $ 1,000,000 |
| Directors and Officers Liability - Primary | National Union Fire Ins. Co. of Pittsburgh, PA | 03-582-40-29 | 1/1/2016 – 1/1/2017 | $7,000,000 |
| Directors and Officers Liability - Excess | QBE Insurance Corporation | QPL0179023 | 1/1/2016 – 1/1/2017 | $3,000,000 |

**EXHIBIT B**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------x
In re                                                                 :        Chapter 11
                                                                        :
IMX Acquisition Corp., <u>et al.</u>, [1]                    :        Case No. 16-12238 (___)
                                                                        :
                       Debtors.                                :        (Jointly Administered)
                                                                        :
                                                                        :        **Ref. Docket No.:** _____
-------------------------------------------------------x

**INTERIM ORDER, PURSUANT TO SECTIONS 105(a), 363(b) AND 364 OF THE
BANKRUPTCY CODE, (I) AUTHORIZING (A) PAYMENT OF PREPETITION
OBLIGATIONS INCURRED IN THE ORDINARY COURSE OF BUSINESS
IN CONNECTION WITH INSURANCE PROGRAMS, INCLUDING
PAYMENT OF POLICY PREMIUMS, AND (B) CONTINUATION
OF INSURANCE PREMIUM FINANCING PROGRAMS;
AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK
<u>AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO</u>**

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors

and debtors in possession (collectively, the "**Debtors**") for the entry of interim and final orders,

pursuant to sections 105(a), 363(b) and 364 of the Bankruptcy Code, (i) authorizing, but not

directing, the Debtors to (a) continue and, to the extent necessary, renew the Insurance Programs

and pay policy premiums and broker fees arising thereunder or in connection therewith,

including prepetition obligations arising in the ordinary course of business, and (b) continue the

Financed Program and renew or enter into new premium financing programs, as necessary, under

substantially similar terms, and (ii) authorizing the Banks to honor and process check and electronic

transfer requests related to the foregoing; and upon consideration of the Motion and all pleadings

---

[1]  The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are
as follows:  IMX Acquisition Corp. (9838); Implant Sciences Corporation (7126); C Acquisition Corp. (8021);
Accurel Systems International Corporation (3856).  The Debtors' headquarters are located at 500 Research Drive,
Unit 3, Wilmington, MA 01887.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

related thereto, including the First Day Declaration; and due and proper notice of the Motion

having been given; and it appearing that no other or further notice of the Motion is required; and

it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C.

§§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and

the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief

requested in the Motion and provided for herein is in the best interest of the Debtors, their

estates, and creditors; and after due deliberation and sufficient cause appearing therefor, **IT IS**

**HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on an interim basis, as set forth herein.

2.      The Debtors are authorized to maintain the Insurance Programs without

interruption, and to renew, supplement, modify, or enter into new insurance policies, and to incur

and pay broker fees in connection therewith, in accordance with the same practices and

procedures as were in effect prior to the Petition Date.

3.      The Debtors are authorized, but not directed, in their discretion, to pay,

honor or otherwise satisfy premiums, claims, deductibles, retrospective adjustments,

administrative fees, broker fees (including, without limitation, the Broker Fees) and any other

obligations that were due and payable or related to the period prior to the Petition Date on

account of the Insurance Programs (including the Financed Program) and the PFA, up to

$10,000.

4.      The Debtors are authorized to (a) continue, in the ordinary course of

business, the Financed Program and the PFA, and renew or enter into new premium financing

programs, as necessary, under substantially similar terms, and (b) pay their installment payments

under the Financed Program and the PFA and any such new premium financing programs as the same become due in the ordinary course of business.

5.      The Banks are authorized, when requested by the Debtors, in the Debtors' discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Order.

6.      Notwithstanding anything to the contrary contained herein, the relief granted in this Order and any payment to be made hereunder shall be subject to the terms of any orders authorizing debtor-in-possession financing and/or granting the use of cash collateral approved by this Court in these chapter 11 cases (including with respect to any budgets governing or relating to such use), and to the extent there is any inconsistency between the terms of such financing and/or cash collateral orders and any action taken or proposed to be taken hereunder, the terms of such financing and/or cash collateral orders shall control.

7.      A final hearing on the relief sought in the Motion shall be conducted on _____, 2016 at _____ (ET).  The deadline by which objections to entry of the Proposed Final Order must be filed is _____, 2016 at 4:00 p.m. (ET).  If no objections to entry of the Proposed Final Order are timely filed, this Court may enter the Proposed Final Order without further notice or a hearing.

8.      Nothing in this Order (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (b) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates, (c) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action against an Insurance Carrier, or (d) shall be construed as a promise to pay a claim.

9.      The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

10.     The requirements of Bankruptcy Rule 6003(b) are satisfied.

11.     The requirements of Bankruptcy Rule 6004(a) are waived.

12.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

13.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2016
      Wilmington, Delaware

_____
United States Bankruptcy Judge

## **EXHIBIT C**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------------x
In re                                          :    Chapter 11
                                               :
IMX Acquisition Corp., et al., ¹               :    Case No. 16-12238 (___)
                                               :
                 Debtors.                      :    (Jointly Administered)
                                               :
                                               :    **Ref. Docket No.: _____**
-------------------------------------------------------x
```

**FINAL ORDER, PURSUANT TO SECTIONS 105(a), 363(b) AND 364 OF THE
BANKRUPTCY CODE, (I) AUTHORIZING (A) PAYMENT OF PREPETITION
OBLIGATIONS INCURRED IN THE ORDINARY COURSE OF BUSINESS
IN CONNECTION WITH INSURANCE PROGRAMS, INCLUDING
PAYMENT OF POLICY PREMIUMS, AND (B) CONTINUATION
OF INSURANCE PREMIUM FINANCING PROGRAMS;
AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK
<u>AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO</u>**

Upon consideration of the motion (the "**Motion**")² of the above-captioned debtors

and debtors in possession (collectively, the "**Debtors**") for the entry of interim and final orders,

pursuant to sections 105(a), 363(b) and 364 of the Bankruptcy Code, (i) authorizing, but not

directing, the Debtors to (a) continue and, to the extent necessary, renew the Insurance Programs

and pay policy premiums and broker fees arising thereunder or in connection therewith,

including prepetition obligations arising in the ordinary course of business, and (b) continue the

Financed Program and renew or enter into new premium financing programs, as necessary, under

substantially similar terms, and (ii) authorizing the Banks to honor and process check and electronic

transfer requests related to the foregoing; and upon consideration of the Motion and all pleadings

---

¹ The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are
as follows:  IMX Acquisition Corp. (9838); Implant Sciences Corporation (7126); C Acquisition Corp. (8021);
Accurel Systems International Corporation (3856).  The Debtors' headquarters are located at 500 Research Drive,
Unit 3, Wilmington, MA 01887.

² Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

related thereto, including the First Day Declaration; and due and proper notice of the Motion

having been given; and it appearing that no other or further notice of the Motion is required; and

it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C.

§§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and

the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief

requested in the Motion and provided for herein is in the best interest of the Debtors, their

estates, and creditors; and after due deliberation and sufficient cause appearing therefor, **IT IS**

**HEREBY ORDERED THAT**:

1.        The Motion is GRANTED on a final basis, as set forth herein.

2.        The Debtors are authorized to maintain the Insurance Programs without

interruption, and to renew, supplement, modify, or enter into new insurance policies, and to incur

and pay broker fees in connection therewith, in accordance with the same practices and

procedures as were in effect prior to the Petition Date.

3.        The Debtors are authorized, but not directed, in their discretion, to pay,

honor or otherwise satisfy premiums, claims, deductibles, retrospective adjustments,

administrative fees, broker fees (including, without limitation, the Broker Fees) and any other

obligations that were due and payable or related to the period prior to the Petition Date on

account of the Insurance Programs (including the Financed Program) and the PFA.

4.        The Debtors are authorized to (a) continue, in the ordinary course of

business, the Financed Program and the PFA, and renew or enter into new premium financing

programs, as necessary, under substantially similar terms, and (b) pay their installment payments

under the Financed Program and the PFA and any such new premium financing programs as the same become due in the ordinary course of business.

5.      The Banks are authorized, when requested by the Debtors, in the Debtors' discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Order.

6.      Notwithstanding anything to the contrary contained herein, the relief granted in this Order and any payment to be made hereunder shall be subject to the terms of any orders authorizing debtor-in-possession financing and/or granting the use of cash collateral approved by this Court in these chapter 11 cases (including with respect to any budgets governing or relating to such use), and to the extent there is any inconsistency between the terms of such financing and/or cash collateral orders and any action taken or proposed to be taken hereunder, the terms of such financing and/or cash collateral orders shall control.

7.      Nothing in this Order (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (b) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates, (c) shall impair, prejudice,

waive or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action against an Insurance Carrier, or (d) shall be construed as a promise to pay a claim.

8.      The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

9.      The requirements of Bankruptcy Rule 6004(a) are waived.

10.      Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

11.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2016
        Wilmington, Delaware        _____
                                    United States Bankruptcy Judge